And we hear argument now in the two cases, Glasser v. Blixseth. They're sort of mirrors of each other. So, you know, we'll give you 20 minutes on the clock, and you can use as much of that as you want for both cases because it seems familiar. Okay? Yes, Your Honor. There we go. May it please the Court, Philip Stillman for Mr. Blixseth. Still Mrs. Stillman. I'm still Mrs. Stillman. Okay. I was not sure. Your Honor, I think that the injunction, addressing the injunction issue first, I think that there's a fairly straightforward way of dealing with the injunction issue, and that is that I believe the injunction is facially invalid. The findings are insufficient as a matter of law to support the grant of an injunction, and therefore the bankruptcy court erred as a matter of law in granting, in failing to vacate the injunction, and for that reason alone it needs to be reversed, vacated, and remanded. Why isn't this whole case just moot? The property was sold. Well, it's not moot because there's two reasons. If the, really the main reason is if the injunction was improvidently, if improvidently granted or if they failed to vacate it, then there's no contempt. Well, that isn't necessarily true at all. I mean, that's why this case is so weird. I mean, there was an injunction. It was stipulated to. It ran until judgment unless it was vacated. It wasn't vacated at the time of the sale, so therefore it applied. Well, Your Honor, it's not exactly the case because in the, when the injunction was stipulated to, it was the very beginning of the case, a lot of things going on, and in the injunction, in the language that was stipulated to, it was the parties, both parties, but Mr. Blintzeff reserved his right to challenge that on any grounds that existed at the time or not, without, and did not, expressly did not acknowledge the validity of that. It wasn't that they had challenges, that he could move to vacate it. Right. And that he wasn't waiving any grounds, which I understand to mean he wasn't limited to the usual grounds for vacating an injunction, but that doesn't retroactively eliminate the injunction. It only prospectively eliminates the injunction. Well, at the time, see, at the time that we filed the motion to vacate the injunction, that was, the injunction was granted, was stipulated to in one form or another in September, October of 2000. It was stipulated to twice. A second time. Several times, as a matter of fact. It was continued several times. But finally, it ran to the end of the final judgment in the case, absent of vacation. Finally. Well, I think if nobody moved to vacate it, yes, it didn't expire of its own terms. It wasn't vacated. It wasn't vacated. It wasn't vacated, but the problem, Your Honor, is this. We filed the motion to vacate the injunction in July of 2010. It was not ruled upon by the Bankruptcy Court until July 2012. Okay. Why? I don't know. I mean. You just sat there and did nothing? Sat there and did nothing. Didn't rule on it. Didn't do anything. And the property, as I found out much later, was not sold. I mean, it was sold many months after. Whatever. There was still an injunction in effect. Your Honor, there wasn't. You had to sell the property. You had to go in and say, you better vacate this injunction because I'm going to sell the property. Your Honor, the property was sold while the injunction was pending. That's right. Without notice to anybody. Correct, Your Honor. That is absolutely correct. But the point is. Is somebody entitled to challenge the validity of the injunction just violated and they say the injunction was invalid? I'm not aware of that. Well, obviously, Your Honor, you violated an injunction at your own risk. I'm sorry. You say obviously. I don't see what's obvious. Well, Your Honor. You say at your own risk. It sounds to me like, oh, if it turns out the injunction was invalid, then you could have violated it. And I'm not aware of that. Why aren't you required to go in and have it vacated, challenge it? Well, one of the elements of that. It's a court order. One of the elements of, and which we tried to do, of course, but one of the elements of a contempt is it has to be based on a valid order. On a civil contempt. A civil contempt. All right. But this was valid because it was stipulated to. I mean, I just don't understand what you have to say about that. It was an agreed upon order until it wasn't. And it was at that time. It was agreed upon. Correct, Your Honor. And the point is that it was when we, that the bankruptcy court erred as a matter of law in refusing to vacate the injunction. Fine. Prospectively. And maybe that's true. But there was nothing prospective because it was already sold. No. That's the point, Your Honor. When we filed the motion to vacate the injunction, that was almost a year prior to the sale of the property. So the motion was sufficient to vacate the injunction? No, Your Honor. So there was still an injunction. I'm not saying that the injunction wasn't. I'm not saying, Your Honor, that the injunction wasn't violated. That's not my argument. My argument is that. Your argument is that it was an invalid injunction. But it wasn't an invalid injunction because it was a stipulated injunction. But if the underlying injunction should never have been granted, then. But it should have been granted because it was stipulated to. Your Honor, it was stipulated to not for any reason of merit. We were reserved specifically in the order that we were stipulating to the merit. Prospectively, but retroactively? At any time, yes. Yes, retroactively. You understood this to say that we can retroactively at any time object to the injunction that we've stipulated to? Absolutely. And it says that right in the order. Where does it say that? In each of the injunctions stipulations, it says exactly that. And not only does it say that. Could you show me where it says that? It's in the second paragraph of the injunction at the end. And it says the parties reserved do not stipulate to whether this injunction was valid or they were entitled to an injunction or not entitled to an injunction. And that's something that Judge Kirscher recognized when we ultimately had an argument two years after we filed the papers. And he said it was properly before him whether there should have been an injunction issued. And the point there is that because of the findings that he made when it was challenged, which were by stipulation and order, we were able to raise all the way back to the beginning of the time that was originally stipulated to the injunction. What kind of injunction is that? Well, that was the order. Well, what kind of stipulation is it? It doesn't stipulate to anything. Well, that's what the order, that's what we stipulated to and that's what Judge Kirscher signed. And we did at the time, there was. But you can modify or dissolve the injunction. It doesn't say you can retroactively challenge it. Well, if you take a look at the beginning of that paragraph, it says on any ground which exists or did exist at the time, at any time during the case. You can have it set aside, but it doesn't mean it's invalid. I have a fundamental question. Other than subject matter jurisdiction of the court issuing an injunction, what authority says you can, in a contempt proceeding, raise the validity of the injunction? I understand subject matter jurisdiction. The court didn't have subject matter jurisdiction, possibly personal jurisdiction. The injunction wasn't properly served and so on. But what case says that you can simply define injunction, you can violate it, and then challenge the validity of the injunction? Well, what the case says, it's a 1993 case. The name, of course, escapes me of when you're going. Do you want your brief to look at? Yeah, I can pull it up. What do you want? Do you want your brief? Sure. If I might approach, I can tell you. It's a blue brief, right? I think so. We've got another blue brief over here. Okay. But I have another question. Well, I. I don't want to come to the brief if you have notes or anything like that on it. No, you can come to the brief. It should be in the section of the brief, though. Here are both of your briefs. These are your briefs. Here. This is the contempt brief. There you go. I'm just asking what case you're relying on. Yes, Your Honor, and I apologize. You know, we're coming to court. Oh, you've had a lot of cases to argue. Yes. I think it's the, I believe it's the Kirkland v. Legion public case, Your Honor. Okay. That's my question. Let me take a look at it. Go ahead. I think Judge Wilson had a question. So in any event, Your Honor, it's not that I'm saying that there wasn't an injunction as of the time Mr. Blixa sold the property. What I'm saying is that if that injunction, if this court found that the decision not to vacate that injunction, that injunction was invalid, then it should, then it would have gone back to day one. I absolutely have a disagreement about what it means to vacate an injunction. What it means to me to vacate an injunction is to say it's no longer in effect, not it never was in effect. Well, and I understand that. I understand where you're coming from, Your Honor, on that. But the point is that we were able to, we never waived any challenges to the injunction having been issued as non pro tonque, as of the beginning of the time. That's our, that's. That's not my understanding. So then the, you also claim, don't you, in the contempt case that this is actually a criminal contempt? Yes, Your Honor. If it is a criminal contempt, then you can challenge the injunction, right? Correct, Your Honor. If it's a criminal, if the court finds that it's a criminal contempt, then the, excuse me, then the invalidity or the. So why aren't you in a catch-22 on that one in the sense that if it's a criminal civil contempt, there's no jurisdiction over the civil contempt. And if it's a criminal, because it's not final, and if there's a criminal contempt, then you can challenge the injunction. Well, there's, if it's a criminal contempt, it's kind of, you're right, it's two different standards. But if it's a criminal contempt, Your Honor, then we've been, Mr. Blakes' was entitled to the full penalty of criminal procedural rights. Okay. And I agree that if it's a criminal contempt, which is the only way. So if it's a civil contempt, why do we have jurisdiction over the civil contempt? Subject matter jurisdiction, you mean? Yes. Well, this. Ordinarily, in a civil contempt, you have to wait until the end of the case. Correct, Your Honor. And in this case, because the both case and contempt on that case are up on appeal, it's. You mean the 159? Yes. The appeal from the order to nine, the motion to vacate. Yes. And. The contempt. And the contempt. So unlike a normal case, which you're certainly correct, it would be an interlocutory appeal. What did the district court say about the order, the appeal from the order denying the motion to vacate? He first, by imposing the sanctions of striking the answer. No, no. And entering judgment, he said it was, there was no case in controversy. It was moot. He said it was moot. The appeal was moot. The appeal was moot. The appeal was moot. Because he had entered judgment. Well, no. He said it was moot because he sold the property. No. No. Because the answer was struck and judgment was entered. That was in the contempt proceeding. Correct. That was. And as a result of that, the appeal was then moot. I mean, the appeal. But it didn't finish the case because it was still only along one claim in the case. Well, see, the problem is that the. No, so. It's a final appeal. You don't have the end of the case. Well, it's a final. The granting or denial of an injunction is a final appealable order to this court. And therefore, because that brings. That allows a contempt for violating that injunction to go part and parcel on the appeal. But you weren't appealing the grant or denial of a preliminary injunction. Yes, Your Honor. You're appealing the bankruptcy court's order denying the motion to vacate. Correct. Which is different. Not in this case, Your Honor. And that's the unusual part of this. That's the wrinkle here in this case. Based on the language that was approved by Judge Kershaw based on the intent of the parties and the stipulations and the plain language of the stipulation. Because under a normal situation, the issue is you have to show. You have to show a change in circumstances, new facts, something. Right. You don't have to do that. And you could vacate it just by showing that it was not valid going forward ab initio. But. Well, we've been over this. But let me ask you a different question. Sure. With regard to the contention that this is a criminal contempt. Is there any case in which you have a criminal contempt where the sanctions are basically within a lawsuit? There was no fine. There was no imprisonment. There was nothing that one ordinarily calls a punishment. So what makes this a criminal contempt? It may be a violation of due process. Well. Which it may well be. But that's a different issue. Well, it's actually both a violation of due process and plus. And the reason is that when you take a look at how do you parse out, even though the Supreme Court said we can follow a few simple rules, I think the Court knows oftentimes it's not that simple as to discern. But here you have a contempt that cannot be purged. Why not? It's not coercive. I'm sorry, why not? Well, it's not coercive. None of the sanctions imposed were coercive. Why would your client have gone back, bought the property again, and purged the contempt? I don't understand. He sold it. He can go back and buy it back. So it's capable of being purged. Well. Probably expensive, but that's quite different from impossible. Non-purgeable means you've got a $50 fine. There's nothing you can do about it, a $100 or $100,000 fine, and you've got to pay it. If you don't pay it, we stick you in jail. But in this case, the property was still out there. What he was enjoined from doing is selling it. If he reacquired the property, he would be back in compliance with the injunction. And I don't see how that's – he doesn't have the power. He might not have the ability to purge it. He might not have the resources to purge it. He might have spent the money, but that doesn't mean it's not purgeable. Well, Your Honor, that was – I think theoretically you're correct. I mean, you know, it's theoretically – I think you could answer that way in almost any case. But more than that, the district court – No, no, you can't answer that in any case. The district court says you've got a $1,000 payment you've got to make. There's nothing you can do to avoid that. In this case, you can. He can actually go out and reacquire the property and be in compliance. That was never an offer. What the court did was it said – It's up to your client. The question is can he purge it. The question is can he purge it. He sells it without permission of the court, against the court order. He gets held in contempt for that. He can go out, buy the property again, and say, whoops, sorry, I wasn't – you know, I'm back. And at that point, there's nothing else for him to do. That wasn't the option that was done here, Your Honor, though, because the sanctions that were imposed for contempt were not go out and buy the property back. It was I'm striking your answer, I'm entering default, and which was – it's not something else. And a large part of the reason for that was the disadvantage to the parties. But a lot of it was the fraud on the court, essentially. Well, it's a punishment because it's not – it's not that was a punishment. And that may mean that the termination damages might have a – I mean, termination sanctions could have a substantive problem as civil contempt. But I don't see how that makes it criminal contempt. Well, it doesn't – it makes it criminal in two ways. First, it was the striking of the answer and the enter of judgment as a practical matter. Any case in which striking an answer and entering judgment was called criminal contempt? I haven't seen it. I think this is an unusual situation. And, you know, the injunction was designed to protect the ability of the opposing parties to have a meaningful lawsuit. As soon as he sells the property, at that point they are faced with a – and dissipates the money. At that point, they're faced with a difficult choice of having to spend more money litigating something for which they can't recover. So, you know, so the – this doesn't strike me as – I mean, all the district court did is say, look, you have now tried to deprive the other side of a fair chance to litigate the case. And so we're going to just enter judgment against you. We're going to presume that you have no valid defense. With all due respect, Your Honor, you and I disagree 180 degrees on that issue. And the reason we disagree – the reason I disagree with that – Luckily, I get the less. Unfortunately, you get the less. So, you know, so I think you're going to have to persuade me to turn it on and face – I'm going to try and bring it on my side here, Your Honor. And that is this. The problem with that is that if this was an issue of destruction of documents, of – But it is. It is very much like that. What's going on is there is an asset that makes the case litigable because the plaintiffs can look at it and say it's worth spending the money to litigate because there's something worth $14 million or thereabouts there against which we can collect. Once that's gone, the whole economics of the lawsuit, the whole ability to litigate, because at that point you're throwing money into a black hole trying to pay lawyers to litigate this. So essentially what your client did by taking that asset out of litigation is he's destroyed the other side's ability to effectively litigate the case. The issue of striking an answer and entering default is done because it's not – it makes it impossible for the plaintiff or, let's say, the defendant to prove their case. In this case, the sale of that property, that property, the real estate, was never property of the estate. It was not subject to a fraudulent transfer cause of action. The only issue that was subject, the only property that was subject to a fraudulent transfer action was the stock in some corporations that was transferred not by the debtors but by Ms. Idria Blitzeth pursuant to a court order in the family law. You're reciting facts that we all understand and that don't get to the question I'm asking you. The question I'm asking you, the bankruptcy court looks at this and says, look, what you've effectively done is you've deprived them of a fair chance to put on their case because at this point it is no longer economically feasible for them to spend the money to prove up a case because all they're doing is throwing money away in proving up the case and paying lawyers at rates at which I can only imagine to litigate the case because there's nothing left to fight about. The one asset, the one thing that made the litigation viable is gone. So essentially what you've done is you've deprived – by getting rid of the property, you've deprived them of any ability to prove up their case. But, Your Honor, the difficulty in collection or even the impossibility of collection has never been an irreparable harm issue. You first have to prove your case, prove entitlement to your damages, and then collect on it. And the possibility that it's more difficult to collect is not – is under Grupo de Mexico. Well, it's more difficult because of a contempt of court is the judgment here. The reason is it's not difficult because of life going on. It's difficult because there was a contempt of court according to the judge. So that's different. But let me ask you a different question. What is the connection to all this of the fact – and I'm sort of losing my thread here because I had something else I wanted to say which was important. Go ahead and I will come up with it. Sure. You can answer my question. Well, come over to my side, Judge. The issue is – You know, the cases say, look, if you're doing this, you can presume – we have cases that say you can presume that the plaintiff, by destroying the documents – Intentional spoliation. He has deprived the other side of an ability to litigate, presumably because he had a bad case. Why can't the same presumption, exactly the same presumption operate here? So what happens is your client must have thought he had a bad case, because he gets rid of the one thing that makes the case litigable, economically litigable, and thereby effectively deprives plaintiffs of a chance to prove their case. Just like destroying documents, you have taken away the one economic incentive for them to litigate. Well, under the Supreme Court's rule in Grupo, the difficulty or increasing the difficulty in collection does not fall within that category of making it difficult to litigate. You still have to prove your case, Your Honor, and the problem with this whole – Yes, so why would they prove their case if they have nothing to get out of it? But, Your Honor, I mean, if you take a look at it from that broad perspective, if you look at AP 14, the judge said, liquidating trust, you only get a $40 million judgment, not a $280 million judgment, because everything else would be going to credit suesas barred by imperi delicto. So there's a $40 million judgment here. Now we're in a different case to which they could, I believe, they will never be able to prove substantively if forced to put themselves to the proof in front of a jury, which we're entitled to under this case. They would never be able to prove their claim. And whether or not Mr. Blixeth sold that property or didn't sell that property, we'll never know because your client has made it economically infeasible for them to prove their case. It's as simple as that. Here's my question about that. It's related. Okay, and this is what I was going to say. I knew if we kept talking long enough. There was also a bond. You haven't mentioned the bond. Yes, enough. Yes. The bond, the $13 million bond, okay? If he posted a $13 million bond, then everything we've been talking about wouldn't be true, i.e., there would be something to litigate over, i.e., the proceeds of the $13 million bond. Correct, Your Honor. All right. Is there a $13 million bond? There is no possibility that Mr. Blixeth could post a $13 million bond. And, in fact, the court. But you just proved up the problem. But the problem is that that judgment could be a $50 million judgment, or the AP-14 could be a $280 million judgment. We're now talking about funny money because none of it's collectible. But here is the problem. It was when he had the house in Mexico, right? No. I mean, see, the problem is I find out later, and this is in our papers, but. . . Why not? A hurricane hit the property. Why not?  Why can't they collect against the house? Well, because. . . See, that's the problem. Even if they won their fraudulent transfer clause action, which I think is barred by the effect of the dissolution judgment. . . And I think, as I was going to say to you, you want a way to clear out the deck of all Blixeth. You're not going to make me forget my question by ramping. The. . . Why wouldn't it have been collectible if he had the house? $40 million. That's a lot of litigation fees that you can eat up that way. The house was not worth $40 million after the hurricane. $14. $14. And then it ended up being about $10, I think, net after paying claims in Mexico. But the problem, Your Honor, is that all they would get is the stock. All they were entitled to get was a transfer of stock. That's it. And the law is clear that just even if a trustee in the Chapter 7 case owns a hundred. . . If the bankruptcy estate owns a hundred percent of the stock of a corporation, that corporation is not run by the trustee. And it's not subject to. . . The assets of that corporation are not property of the bankruptcy estate. And that is one of the fundamental issues here is that property, that real estate, was not property of the state. And even if the fraudulent transfer was a home run in front of a jury, which I highly doubt, and even if they surmounted all of the actual legal defenses, they would get the stock back, quote, not the asset. If it's an asset against which you can collect a judgment, it doesn't have to be part of the estate. It's an asset against which you can collect. Well, yes. If they got a judgment against Mr. Blixeth, they could attempt to collect, I guess. But the problem is that the judgment. . . I guess my point is, Your Honor, that the judgment that they would get is one of two things. It's either a judgment for the return of the property to the estate, i.e., the stock, or a money judgment. It's only two options under the Bankruptcy Code. They would not. . . So if they got a judgment, it would be return the stock to the bankruptcy estate. Or here's a. . . I'm giving you a money judgment in the amount of whatever that is. Neither of those would give you a judgment against the property in Mexico. Why can't you give it to me, Your Honor? I guess you could try and execute an American judgment in Mexico if it was against the right parties and so forth. But the point. . . I guess the point I'm trying to make, maybe a little obtusely, is that that issue. . . More than a little. The. . . The bankruptcy court enters an injunction for the purpose of securing the value of any judgment. So obviously, somewhere in there was some thinking that that asset would be valuable to collecting any judgment. Now you're trying to persuade me it was worthless to begin with. Why have the injunction to begin with? No. I'm not trying to persuade you that it's worthless. What I'm trying to persuade you is that the injunction was invalid and should have been vacated when we filed the papers for the injunction. And because of that. . . Go back on that for a minute. Your basis, your main basis for finding it invalid now was that the order vacating didn't have sufficient findings and so on. I mean, that doesn't make it invalid. It just means it has to be done again. Well, wouldn't that mean, wouldn't that reverse it, Your Honor? For the time being, but not retroactively forever. If he now did it right, presumably it would be back in effect. But if the natural effect, if it was improvident, if they weren't entitled to an injunction in the first place. But that isn't to say they weren't entitled to one. I mean, your main arguments are that Judge Kirshner didn't dot his I's and cross his T's in making the right findings on the right standards. Well, that's. . . More than the merits. Well, that's part. . . And it's more than dotting your I's and crossing your T's. It's required by Winter and by the Supreme Court. And it's required by. . . And that doesn't prove it wasn't valid. It just proves it wasn't. . . And the other. . . And the other problem, of course, which we haven't addressed yet, is the fact that under Stern, the Bankruptcy Court had no subject matter jurisdiction to enter a final order on the injunction. It had to go. . . That was not a preliminary injunction. Yeah, but that's a final appealable order, Your Honor. It doesn't make it a final judgment for purposes of Stern. Well, it may, because under. . . If you take a look at 157C1, which is the jurisdictional statute, C1 says that it says final order judgment. And so under. . . Under C1, that falls squarely within. . . Since this is a fraudulent transfer action, I think it falls squarely within the problem. . . The Stern problem. And that was also addressed in Executive Benefits, that you can. . . That the Bankruptcy Court could at most do proposed findings of fact and conclusions of law, kick it to the District Court under 157C1. Thank you. Thank you, Your Honor. We'll hear from the other side. Good afternoon. May it please the Court. I'm Robert Bell. I'm here on behalf of YCL2. Let's talk about the validity of the injunction, first of all. Mr. Stillman's position is this. You can agree to an injunction, violate it, and then claim as a defense that the injunction that you agreed to was not valid. Now, it is true, as I understand it, that with regard to civil contempt for a litigated injunction, you can contest its validity. You can, and he did. Okay. No, no. But in other words, we had some discussion earlier about whether you can contest an injunction, violate it, and then contest its validity. And the answer is, as I understand it, yes, you can if it's a civil contempt. You can. But can you contest it when you agree to it? That's a different question. The validity of it. And that's the situation that is here. Well, the case at site is Keller, M. Ray Keller, and it's a brief statement that says the validity of a contempt injunction is based on the legitimacy of the underlying order. Right. And here the underlying order was valid because he agreed to it. Now, what he says in his opening argument is, well, we filed a motion to vacate in July 2010, and it wasn't heard for a long time. Well, why was that? Yeah, why was that? Because he didn't set it for hearing until May of 2012. He could have? Sure. I think it was set, and I think it may have been continued several times. I thought the bankruptcy judge continued it. I think so, but I think it was a request of the parties, I believe, and that was back in the record. They were seeking to recuse Judge Kirshner. They were seeking to recuse him as well, yeah. Right. But they finally set it for hearing in May of 2012, and so the time that the injunction was violated in April 2011, the injunction that was in place, and what he's complaining about is the agreed injunction. What he's complaining about now is the court's failure to dissolve the injunction in its order of July 2012. He's reading the stipulation as allowing him retroactively to contest the injunction. No, you can't do that. What's the purpose of having the injunction? The Blaine case we cite in our case, in our brief from the Fifth Circuit is on point. He agreed to an injunction. He violated it. The plaintiff found out about it, was getting ready to move from contempt. He filed a motion to dissolve. The court fell to him in contempt, and he said, no, you've got to sign my motion to dissolve first, and the court said, no, you agreed to it. Tough luck. That's how it is here. What about the remedy of the, essentially, the default judgment? Well, it was exactly within the court's powers to do so, when the Supreme Court has said that the measure, and I don't know the exact quote here, but in civil contempt you look at the full measure of remedial relief. First of all, if he had posted the bond or could have posted the bond, then it would appear that the rest of the, it wasn't issued in the alternative, right? It was not. And so the rest of the injunction, I mean, the rest of the contempt order, I don't think, see, it does seem superfluous if he had issued, if he had complied with the posting of the bond. Because then the case could have been proven, and there would have been a remedy, and there would be no basis for termination damages, would there? But he told the court immediately, I don't have the money, I can't do it. Well, we could just assume that that piece just isn't there, or that it's in the alternative, essentially, because it functions as one. Well, we don't know exactly what the court would have done if he had said, we'll go to a hearing in December of this year, and Mr. Blixer testifies. And he filed an affidavit at some point, and I don't remember exactly where he said it, but at some point he says, I sold the property, and I spent the money, and I can't. Oh, yes, but that still doesn't say that this man who had huge amounts of money couldn't post a $13 million bond. Well, he's claiming it, Mr. Stillman just claimed today. He can't do it.  Now, he had a $5 million yacht for sale. He could have said to the court, I don't got $13 million, but I'll take this $5 million yacht and put it. But the problem is that the order was not issued in the alternative. No, it wasn't. It was? It was not. It was not. So it wouldn't have done him any good to say, I'll post the $13 million bond, but the rest of it's invalid. I mean, I can't see how it could. If he posted the bond, I don't know. What would be the argument at that point for termination damages, for termination? Well, because of the abuse of the litigation process of continuing to deceive the court. I mean, think about this. He sold that property. But then it seems clearly punitive at that point. Well, I disagree. I mean, you look at the factors, and I think we cite them in our brief of civil contempt. Let me find them here in my notes. It's willful deceit of the court. This is civil contempt, okay? When you put in death penalty sanctions, okay, or default judgments, willful deceit of the court, we have that here. We go to a hearing. My client spends money going to a hearing on the injunction of a property that has already been sold. And then he appeals it. But doesn't the release still have to be either compensatory or deterrent? Yes. All right. How is this compensatory if there were a $13 million bond? How would the default judgment be compensatory? Because you could then just go ahead and prove your case. Yeah. Now, ultimately, do we know what the court would have done if Mr. Blixeth had posted a $13 million bond? And remember, this was not a final judgment. We don't know what the court would have done. You could have made that argument. Your position has to be that Mr. Blixeth didn't have the ability to post a bond, so it would have been futile for the court to give him that alternative. And that's what he has said. But it did give him that alternative. Excuse me? In other words, he wrote a – this is only – it's not the world's biggest problem. But he did write an order that says you have to post the bond and you have a default judgment for $13 million. He did. He did. And at the point that he wrote that, he didn't know whether there was going to be a – whether he was going to post the bond or not. You now know he isn't, and I suppose we can just wash that out. And I have to go back and look at the record to make sure, but I think Mr. Blixeth had already testified that the money was gone and he did not have the money to put into the court's registry or anything else. We asked, I think, for one of our remedies is that the money be put in the court's registry that represents the proceeds of the sale. We also got to remember, too, that this injunction not only enjoined and protected us in this case, but in the Desert Ranch case, we sued Mr. Blixeth. It's pending still before Judge Haddon now. And we asked for an injunction because we had a $40 million judgment in AP-14 and now he's made fraudulent transfers in the Desert Ranch case. Mr. Blixeth argues you don't need the injunction because you have the injunction in Tamarindo. Now, the two things are unrelated. We could recover in AP-14 and still recover in Tamarindo. Well, he possibly could have held him in criminal contempt and put him in jail or fined him or something, but that isn't what was done here. No. Have you ever seen a case in which criminal contempt? You don't think this was criminal contempt? This was not criminal contempt. It certainly was remedial in nature. You're not trying to defend it as criminal contempt. No, this is a civil contempt. It was done to make force compliance with the court orders and to give compensation and remedial relief to YCLT because the property we were going after was gone. I mean, Mr. Stillman says we can't prove our case. Well, here are the very facts. Yellowstone Development owned the assets of a corporation that owned the property. Within three months of it filing bankruptcy, it transferred those assets to Idra, who immediately transferred it to Tim all in one proceeding. She was just a conduit. A property that he spent $40 million on. What did YD, Yellowstone Development, get back in return? It got allegedly a $5,000 payment it never received and a note from Idra for $39 million, which our expert, and this was testified at the injunction hearing, and our own expert said that note was worthless because Idra was insolvent. So what did YCLT get, or Yellowstone Development get, for this $40 million piece of property that it transferred on the eve of bankruptcy? Nothing. Yet, Mr. Stillman says we can't prove our case because of the releases in the MSA, you know, the Magna Carta Separation Agreement. He thought that the injunction, at least as currently issued, was invalid, at least prospectively. I suppose that wouldn't matter because he'd already said it. No, he agreed to it. I mean, can you agree to it? This is the simple issue. Can you agree to the injunction, stipulate to it, violate it, and then say, King's X, the injunction's invalid, so my violation doesn't matter? That's the law. He wins. You could write a peculiar, a very peculiar order that says we agree not to sell it, but we also reserve the right to retroactively claim that this agreement, this order not to sell is invalid. Yeah, who's going to agree to that? It's crazy, but I suppose that's what he's saying it's in. It didn't say that. He could contest it. He could move to dissolve it, and if the court said it's dissolved on July 28, 2012, then on July 29, 2012, he could have done what he wanted to. But until that point, that order was valid. It was in place, and he willfully violated it. Why did he do it? Well, we put in our brief on April 2011, shortly before he filed or sold the property, involuntary bankruptcy petition was filed against him, and it was pending, so he went out knowing exactly what he was doing. With total contempt for the court in this process and spitting in everybody else's faces, he sold the property, even though he had agreed to the injunction, and now he's claiming, in order to save his own rear end, that the injunction was invalid that he agreed to. So the meta issue, since presumably he doesn't have any money, what is all this litigation about? Well, the court ordered him to account. He didn't do it. I assume we should just take his word. I mean, he's paying Mr. Stillman, I assume, but he has some money. Now, maybe he's paying with the money that he got from us through selling our property. I don't know. But he has some money. Are we supposed to just take his word that he has no money? He took $200 million from the debtors and absconded with it. Where is that money? This is on the hopes that he has hidden assets that you can cover. Your Honor, I spent a lot of time on this case. I certainly hope so. So on the stipulation for entry of the injunction, it did allow for him to file this motion to vacate. Yes. Right? Just taking that for a moment, putting aside the contemporary. And he filed his motion. The bankruptcy judge finally ruled on it, and the bankruptcy court denied it, took it to the district court, and the district court says it's moot. This appeal is moot, or this case is moot. It is moot. And you know what? They didn't brief that issue. I mean, they've waived this whole thing. And why is it moot? Why is it moot? Because what is moot in this? The justiciable controversy that exists at the beginning of the case is no longer present. What is the justiciable controversy? The avoidance of that transfer and the return of the asset to YCLT. Can that happen? It can't. Does it make any difference to the ultimate equity or validity of the contempt order whether or not the motion to vacate should have been granted prospectively? Just a minute. I'm going to give you a hypothetical possibility. Suppose one were to find, the district judge were to find that, in fact, the motion to vacate should have been granted because it was, because he didn't have, likely to have success in the merits, most likely. Or that it wasn't, at least wasn't properly decided because he didn't make proper findings, which seems like a more viable possibility. At that point, would, if there were no longer an injunction in place, he could then have sold the property, right? Correct. Right. So, therefore, if the injunction should have been vacated, wouldn't that affect the validity of the contempt order? No. Why? Well, because he agreed to the injunction. I'm sorry? He agreed to the injunction. I understand that. But the question is, if he could have sold the property before the litigation anyway because he would have gotten, should have gotten the injunction vacated prospectively and at that point he could have sold it, then it still wouldn't have been around to satisfy the judgment. Well, that's true. But, no, that happened. What we have here is he agreed to the injunction. The injunction's in place. And while that agreement is in place, before ---- I understand that. But why doesn't that suggest that the validity of the, the prospective validity of the injunction is not a moot issue? I'm sorry. I guess I'm not following. Why doesn't that suggest that the prospective validity of the injunction, which is really what the motion to vacate was about, is not a moot issue? Well, it was a moot issue at the time the court decided it because the property was gone. I understand it was gone. But if it would have been gone anyway? Well, how do we know it would have been gone anyway? I guess I'm not following your question. It depends which way the motion to vacate comes out. Right. But he filed the motion to vacate and finally it got ruled upon. By that time the property was gone. But up until the court ruled, up until the court decided one way or the other on the motion to vacate, that injunction was in place. And you can't go back and say, okay, now that the court says the injunction is not valid, that means that that gives me absolution for the fact. You could say it wouldn't have been valid, but a later one would have. Therefore, the question of what money is available is, you know, becomes like a debatable question. What was the underlying relief you're seeking? In the Temeral case, we were seeking to avoid the transfer, return the assets of the corporation that owns the property, or for a money judgment of $40 million. The Uniform Fraudulent Transfer Act gives you those alternative remedies. He had said to us, we'll pay you $40 million. That's why I spent on it. If you had a money judgment, how would you collect on it? How would you collect against the property in Mexico? That's why the injunction was so important, because we wanted to make sure that we had a security that was there. That's why the court issued the bond to replace that security that he willfully, deliberately, deceitfully, and dishonestly sold out from under us. Could you go down to Mexico and record a judgment in the Mexican court system and tie up the property in Mexico? I do not know that. I'm assuming you could. It might be a difficult process. But what we would do is you would void the transfer of the interest to the corporation, such that it came back to the debtors, or now to YCLT. Thus, we would own the property. And we could do with it what we want, and we could sell it. But again, this whole thing is moot because he sold it. And it's an important point. The whole basis of Judge Haddon's decision was mootness. They put it in their point of error. They don't breathe it. So they've waived any complaint about Judge Haddon's ruling. I mean, that's just, you know, that's Appellate Advocacy 101. You've got to brief it. And you did it. They come back and say, well, you briefed it, so it's okay. No, not unless there's plain error. And the finding of mootness isn't plain error. It was the correct finding. The whole purpose of the injunction was to preserve the status quo and to keep that property and to get it returned. We can't get it returned because of his client's dishonest conduct. Even though we sent them a letter, including Mr. Stillman, sent them a letter in December 2012 saying Tamarindo LLC, Mr. Blitzen's corporation, has been dissolved. It's the one that owned the assets that owned the property. What's up? Has the property been sold? Mr. Stillman replies to us, no, you know, it's just a clerical error. And it's in the record. Now, what did he know at that time? I don't know, but we were asking him about it. And they continued to, at least Mr. Blitzen, continued to deceive the court. He did so at the injunction hearing. He did so at the appeal. We litigated the entire appeal of the injunction, briefed it, and argued it, even though the property had already been sold. That's why Judge Haddon said this was the worst thing he's ever seen in his years on the bench, as the continual deception and deceit of the court that warranted the sanctions that he gave. And the district court and the bankruptcy court, the district court had broad discretion to make its findings. Unless its findings are clearly erroneous, then this court has to affirm it. Okay. Thank you. You're out of time. I think we've heard enough. The case is argued with sentence omitted.
judges: KOZINSKI, PAEZ, BERZON